IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARTY ROBERT BEGAY,

      Plaintiff,

      v.                                               1:13-cv-00515-LH-LF

DWAYNE SANTISTEVAN,

      Defendant.

**PROPOSED FINDINGS**
**AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on plaintiff Marty Robert Begay's Prisoner's

Civil Rights Complaint (Doc. 1), and his Memorandum of Law (Doc. 14).  Pursuant to the

Court's order (Doc. 29), defendant Dwayne Santistevan submitted a *Martinez* Report[1] (Doc. 42).

Begay responded to the *Martinez* Report (Doc. 43), and filed additional documents in which he

continues to argue the merits of his claims. [2]

Begay's subsequent submissions are more properly characterized as "surreplies."  This

district's local rules require permission from the Court to file a surreply.  *See* D.N.M.LR-Civ.

7.4(b).  While the Court is mindful that it must liberally construe a pro set litigant's filings, *Hall*

*v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991), pro se litigants must follow the same

procedural rules that govern other litigants, *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir.1994).

---

[1] *See Martinez v. Aaron*, 570 F.2d 317, 319-20 (10th Cir. 1978).

[2] Plaintiff filed a "Notice for introduction of Exhibits" (Doc. 47), "Notice of Statement of Facts and Introduction of Exhibits of Facts" (Doc. 50), and "Statement of Facts including Introduction of Exhibits" (Doc. 53).

Although Begay did not request the Court's permission, the Court nonetheless will consider

Begay's additional filings in response to the *Martinez* Report.

The Honorable C. LeRoy Hansen referred this case to me to recommend an ultimate

disposition of the case.  Doc. 3.  Having considered the parties' submissions and the relevant

law, I recommend that Begay's complaint be dismissed because it is moot.

## I.    Background Facts

Begay is an inmate housed at the Southern New Mexico Correctional Facility.  Doc. 12.

Begay's complaint alleges that defendant Santistevan erroneously classified him as a member of

a "security threat group" (STG) based on his suspected affiliation with the Los Carnales gang, an

affiliation that Begay adamantly denies.  Begay contends that as a result of the STG membership

status, he spent several years housed in segregation in a Level VI Secured Housing Unit (SHU),

which limited his ability to practice his religion and caused him great stress, in violation of his

First and Eighth Amendment rights, the Equal Protection Clause,[3] and the Religious Land Use

and Institutionalized Person Act, 42 U.S.C. § 2000cc *et seq*.  Doc. 1 at 2–3, 18; Doc. 14 at 1–2;

Doc. 43 at 1–7; Doc. 47 at 1–3; Doc. 50 at 2–5; Doc. 53 at 2–3.  He also asserts that the Security

Threat Intelligence Unit (STIU)[4] failed to allow him to present evidence that he is not a gang

member and undeserving of STG membership status, in violation of his Fifth and Fourteenth

Amendment rights.  Doc. 1 at 2–3; Doc. 14 at 1, 2; Doc. 43 at 4; Doc. 47 at 2–3; Doc. 50 at 2, 4–

5; Doc. 53 at 2.

---

[3] The Court dismissed Begay's Equal Protection Claim in a prior order.  Doc. 21.

[4] Begay mistakenly identifies the STIU as the "Security Threat Investigations Unit."  Doc. 42 at 2 n.1.

In February of 2014, Director of Adult Prisons Jerry Roark reclassified Los Carnales from an STG to a "Disruptive Group."  Report at 71, 79.[5]  Director Roark conditioned the downgrade on the inmates' cooperation and ability to avoid misconduct such as engaging in violence, gang recruitment, or criminal activity.  *Id.* at 79.  Following the change in Los Carnales's status, Begay has been in a general population setting and is able to engage in Level III activates and programming.  *Id.* at 71.

Begay seeks equitable relief terminating his STG membership status, allowing him to be released from the SHU, and allowing him to regularly engage in religious activities.  Doc. 1 at 5; Doc. 43 at 6.  Because Begay no longer bears the STG membership label, he is unable to identify a case or controversy that can be redressed by a favorable decision of this Court.  His complaint is therefore moot.[6]

## II.   **Discussion**

The United States Constitution limits federal judicial jurisdiction to cases and controversies.  *Rhodes v. Judiscak*, 676 F.3d 931, 933 (10th Cir. 2012) (citing U.S. Const. art. III, § 2).  An actual controversy must be present at every stage of the case, not only when the complaint is filed.  *Johnson v. Riveland*, 855 F.2d 1477, 1480 (10th Cir. 1988).  "[W]hen intervening acts destroy a party's legally cognizable interest in the outcome of adjudication[,] . . . Article III would deprive the federal courts of jurisdiction over that party's claim."  *Tandy v. City of Witchita*, 380 F.3d 1277, 1290 (10th Cir. 2004); *see also McClendon v. City of Albuquerque*,

---

[5] Citations to "Report" refer to the attachments to defendant's *Martinez* Report.  The page number refers to the Bates number in the lower right hand corner of each page, which is preceded by the designation "MtzRpt."

[6] This Court previously questioned whether plaintiff's case was moot when he was transferred from one facility to another.  *See* Doc. 15.  Plaintiff explained that the STG status followed him to the new facility, and the conditions of his confinement remained the same.  Doc. 20.  Accordingly, the Court allowed the case to go forward.  Doc. 21.

100 F.3d 863, 867 (10th Cir. 1996) ("Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction.").

"A case becomes moot when a plaintiff no longer suffers 'actual injury that can be redressed by a favorable judicial decision.'" *Rhodes*, 676 F.3d at 933 (quoting *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983)). The crucial inquiry in determining whether a case is moot is "whether granting a present determination of the issues offered will have some effect in the real world. When it becomes impossible for a court to grant effective relief, a live controversy ceases to exist, and the case becomes moot." *Ind v. Colorado Dep't of Corr.*, — F.3d —, 2015 WL 5307426, at *3 (10th Cir. 2015) (quoting *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010)). "[M]ootness is found when events outside the litigation make relief impossible." *Jordan v. Sosa*, 654 F.3d 1012, 1023 (10th Cir. 2011) (internal quotations and citation omitted).

Begay's complaint requests that the Court remove his STG membership status and release him from high security level housing where his religious practices are limited. Doc. 1 at 5. However, Begay has been reclassified and, as recently as July of 2015, he indicates that he is a Level III inmate. Doc. 53 at 3. Because Begay is no longer classified as a member of an STG, he is part of the general population and can participate in Level III programming. It therefore is impossible for this Court to grant effective relief: events outside of the litigation, namely Begay's reclassification, provided the relief Begay sought to achieve through this lawsuit.

Despite the downgrade, Begay asserts that he is in constant fear of being reclassified as a member of an STG without the benefit of a hearing to dispute the classification. Doc. 43 at 6. Consequently, Begay further requests that the Court remove the STG and/or disruptive group membership classification from his file so he will not be subject to more restrictive confinement

based solely on these classifications.  Doc. 43 at 6.  Liberally construing Begay's pleadings, he appears to request that the Court find his case is subject to an exception to the mootness doctrine. "[A] court will not dismiss a case as moot if:  (1) secondary or collateral injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit."  *Ind*, 2015 WL 5307426, at *3 (internal quotations and citations omitted).  Begay arguably asserts the "capable of repetition" and "voluntary cessation" exceptions.  However, neither exception applies under the circumstances of this case.

> A.      Capable of Repetition

The narrow exception of whether the issue is a wrong capable of repetition which will evade review "is only to be used in exceptional situations."  *Ind*, 2015 WL 5307426, at *5 (quoting *Jordan*, 654 F.3d at 1035).  To avail himself of this exception, Begay bears the burden of establishing that "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again."  *Id*.  In other words, "there must be a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party."  *Id*. (quoting *Murphy v. Hunt*, 455 U.S. 478 (1982)).  Begay fails to establish either prong of this test.

As to the first requirement, Begay alleges he was confined in the SHU between 2009 and 2014, which provided ample time to fully litigate the issues.  As to the second requirement, there is no reasonable expectation that Begay will be subject to confinement in the SHU or that his religious practice will be hindered again in the future.  Begay has not been classified as a

member of an STG since February 2014.  He adamantly denies he is a gang member, and in
April 2015, he signed a letter affirming his commitment to abstaining from gang related activity,
Doc. 53 at 7.  He is not currently housed in the SHU and does not allege that his ability to
practice his religion has been limited since attaining Level III privileges.  The only way Begay
again will be subject to Level VI restrictions is if he engages in misconduct.  The Court,
however, will not assume that Begay will engage in misconduct that could subject him to
confinement in the SHU at some point in the future.  *Ind*, 2015 WL 5307426 at *4 ("For
purposes of assessing the likelihood that state authorities will reinflict a given injury, we
generally have been unwilling to assume that the party seeking relief will repeat the type of
misconduct that would once again place him or her at risk of that injury.")  Begay has failed to
carry his burden of establishing the "capable of repetition" exception to the mootness doctrine.

     B.     Voluntary Cessation

     A plaintiff's claim is not rendered moot if the Court determines that the defendant has
voluntarily ceased a challenged practice but may resume it at any time.  *Ind*, 2015 WL 5307426
at *4.  This exception "exists to counteract the possibility of a defendant ceasing illegal action
long enough to render a lawsuit moot and then resuming the illegal conduct."  *Id*. (internal
quotations and citation omitted).  "Voluntary cessation may moot litigation, however, if two
conditions are satisfied:  (1) it can be said with assurance that there is no reasonable expectation
that the alleged violation will recur, and (2) interim relief or events have completely and
irrevocably eradicated the effects of the alleged violation."  *Id.* (internal quotations and citation
omitted).  The defendant bears the burden of demonstrating that the challenged conduct cannot
reasonably be expected to start up again.  *Id.*  Further, "voluntary cessation of offensive conduct

will only moot litigation if it is clear that the defendant has not changed course simply to deprive the court of jurisdiction." *Id.* (internal punctuation and citation omitted).

As discussed above, the Court will not assume that Begay will engage in future misconduct which will subject him to reclassification as an STG member. Accordingly, there is no reasonable expectation that the alleged violation of Begay's constitutional rights will recur. Additionally, it has been more than eighteen months since Begay was classified as an STG member, confined in the SHU, or restricted in practicing his religion. Thus, the reclassification of Los Carnales from an STG to a disruptive group completely and irrevocably eradicated the effects of the alleged violation of Begay's constitutional rights.

The Court further is convinced that the reclassification of Los Carnales from an STG to a disruptive group was not contrived simply to deprive the Court of jurisdiction. The Director of Adult Prisons—not the defendant—was responsible for the reclassification. Doc. 42 at 8; Report at 77, 79. Moreover, the downgrade applied to all members of Los Carnales, not just Begay. There is no evidence that the reclassification was motivated by a desire to manipulate this litigation.

In his most recent filing, Begay says that in February 2015, several inmates with STG membership status were "removed to a unit and pod separated from the regular level III program." Doc. 53 at 1. He seems to say that he himself was removed to Level IV status for a short period. *Id.* This event, however, does not support an exception to mootness. Begay does not allege that the removal to Level IV status interrupted his religious practices. Indeed, Level IV inmates are a part of the general population, albeit at the most restrictive level. Report at 71. While Begay implies that the upgrade was based on his classification as an STG member (Doc. 53 at 1), there is no evidence in the record that he has carried the STG member label since

February 2014.  Further, Begay admits he was released back into "a Level III setting" in April 2015, and there does not appear to be any continuing present adverse effects of his short detention in a Level IV setting.  *See O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.").  The voluntary cessation exception does not rescue Begay's claim from mootness.

## III.    Conclusion and Recommendation

Marty Begay's complaint does not identify a viable case or controversy that can be redressed by a favorable decision of this Court, and no exception to the mootness doctrine applies.

IT THEREFORE IS RECOMMENDED that the Court dismiss Marty Begay's complaint as moot.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

Laura Fashing
United States Magistrate Judge